STATE, Respondent, vs. BOHNER, Appellant.

*December 9, 1932—March 7, 1933.*

For the appellant there was a brief by *F. E. Withrow* of La Crosse and *M. H. Jefferson* of Sparta, attorneys, and *Q. H. Hale* of La Crosse of counsel, and oral argument by *Mr. Withrow* and *Mr. Hale*.

For the respondent there was a brief by *William M. Gleiss*, district attorney of Monroe county, the *Attorney General*, and *J. E. Messerschmidt*, assistant attorney general, and oral argument by *Mr. Gleiss*.

The following opinion was filed January 10, 1933:

WICKHEM, J. No question is raised as to the sufficiency of the evidence, nor do either of the legal questions involved in this appeal require a consideration of the facts concerning the robbery and defendant's connection with it. The first contention of the defendant is that the court erred in trying the case in the circuit court before a circuit court jury. At the preliminary hearing defendant was bound over to the county court of Monroe county. On January 4, 1932, an affidavit was filed by defendant, setting forth that "he has good reason to believe and does believe that he cannot have a fair trial in such action in said court on account of the prejudice of the judge thereon, the Hon. R. A. Richards, and the defendant makes this affidavit for the purpose of applying for a change of the place of trial to some county where the cause complained of does not exist." The affidavit further proceeds to allege "that an impartial and unprejudiced trial cannot be had in the county of Monroe, Wisconsin." The affidavit concludes with the statement that it "is made for the purpose of obtaining a change of venue on the grounds of the prejudice of the judge of said court,

the Hon. R. A. Richards, and because of the widespread prejudice and high feeling against this affiant and his defense of the people of Monroe county."

Thereafter, on the 20th of January, 1932, defendant filed a further affidavit in support of a demand that the trial of the action be changed to an adjoining county, upon the ground that a fair and unprejudiced hearing could not be had in Monroe county. Counter affidavits were filed, and on January 21, 1932, the Hon. R. A. Richards, judge of the county court of Monroe county, made and filed an order which reads as follows:

"The court having considered the application of the defendant for a change of venue on account of the prejudice of the people, and having filed a decision in the matter in which the court is of the opinion that a fair trial can be had:

"Therefore, it is ordered that the motion of the defendant for a change of the place of trial on account of the prejudice of the people from the county of Monroe, be and the same is hereby denied.

"Dated January 21, 1932.

"By the Court: R. A. RICHARDS, Judge.

"Owing to the disability of the undersigned judge of this court to hold court,

"It is ordered that the Hon. R. S. Cowie, judge of the Sixth judicial circuit of Wisconsin, be and he is hereby called in to sit as judge of the Monroe county court in the trial of the above entitled action.

"Dated January 21, 1932."

A few days subsequent to the 21st of January the order above referred to was withdrawn from the files and a second order entered bearing the same date as the order withdrawn. This order denied the application for a change of the place of trial due to the prejudice of the people of Monroe county, and "it is further ordered, upon the affidavit of said defendant . . . alleging the prejudice of Hon. R. A. Richards, county judge, to try said action, that said motion be granted and that the above entitled action be and the same is hereby

transferred to the circuit court of said Monroe county, to be presided over by Hon. Robert S. Cowie, judge of the Sixth judicial circuit of the state of Wisconsin."

Upon the case being called for trial, counsel for defendant objected to the entire panel upon the ground that the jury had not been regularly selected for the trial of this case in county court. This motion being denied, the amended information was read. The amended information was entitled "State of Wisconsin, Circuit Court, Monroe County." Defendant pleaded "not guilty" and the trial proceeded. It is the contention of the defendant that the filing of the affidavit of prejudice deprived Judge Richards of all jurisdiction, and all right to act further in the action except to make a proper order for the removal of the cause or for the calling in of another judge; that this jurisdiction was exhausted when Judge Richards called in Judge Cowie to act as county judge. It follows, according to defendant's contention, that the subsequent order of Judge Richards transferring the case to the circuit court was a nullity.

The civil and criminal jurisdiction of the county court of Monroe county was provided for in ch. 293 of the Laws of 1919. It was there provided as follows (sec. 13):

"The provisions of law applicable to change of venue in the circuit courts of this state, shall be applicable to said county court, except that when the venue of any action shall be so changed, it shall be changed to the circuit court of Monroe county."

It is further provided that the county judge, in lieu of a change of venue, "shall have the right to call upon any circuit judge or any county judge of a county court having civil or criminal jurisdiction of like subject matter to attend, hold court and try such action." Sec. 12 of the act gives the county judge the same right in the event of his absence, sickness, or other disability. It is further provided, in sec. 14,

that "the judge of the county court may also transmit to the circuit court any other case or proceeding before him, if, in his discretion, he deem it expedient." It thus appears that upon the filing of an affidavit alleging prejudice of the judge of the county court of Monroe county, the case may be transferred to the circuit court, or the county judge may call in a circuit judge or the county judge of a county whose county court has the requisite jurisdiction. There can be no question of the validity of defendant's contention that the affidavit of prejudice, if valid and sufficient, deprives the county judge of all jurisdiction except to make a proper order of removal or to call in another judge in obedience to the statutes. *Northwestern Iron Co. v. Crane,* 66 Wis. 567, 29 N. W. 654; *Fatt v. Fatt,* 78 Wis. 633, 48 N. W. 52; *Hewitt v. Follett,* 51 Wis. 264, 8 N. W. 177; *Will of Fraser,* 135 Wis. 401, 116 N. W. 3.

It is our conclusion that the affidavit of prejudice here filed was so irregular as not to deprive the court of jurisdiction under the doctrine of these cases. The request was for a change of the place of trial to another county because of the prejudice of the judge and of the people of Monroe county. It combines allegations which entitled defendant to relief as a matter of right, upon the mere allegation, with others which entitle defendant to relief only upon a proper showing to the court. If the affidavit based upon the prejudice of the judge is effective at all, it immediately deprives the court of jurisdiction to consider or act upon the balance of the affidavit. It appears conclusively from the affidavit that the only relief desired, demanded, or considered a sufficient response to the affidavit would be a change of the place of trial to another county.

In *French v. State,* 93 Wis. 325, 67 N. W. 706, an affidavit was filed asking that another judge be called in because of the prejudice of the judge of the circuit court. This was

coupled with the request that the cause be not removed from the county where the trial was pending. This court held that "the statute does not authorize the defendant to make an application for a change of venue, coupled with the condition that the court shall not send the case out of the county or shall call in another judge to try it, thus dictating to the court its action upon a subject which the law has confided solely to its discretion." It was here held that such an affidavit did not deprive the court of jurisdiction to proceed with the trial.

The affidavit did not leave to the court its discretion to change the venue to the circuit court or to call in another judge, and it amounts to "dictating to the court its action upon a subject which the law has confided solely to its discretion," in addition to improperly combining an affidavit of prejudice of the judge with a request for change of the place of trial upon the ground of prejudice of the people. We think that it was so irregular as not to deprive the county court of jurisdiction. This being our conclusion, it follows that Judge Richards could properly call in a circuit judge to act in county court, upon the ground of his disability, under sec. 12, ch. 293, or that he could, in his discretion, transfer the case to the circuit court. Under these circumstances it cannot be contended, we think, that the calling in of Judge Cowie to act as county judge so exhausted the jurisdiction of Judge Richards as to make it impossible thereafter, with the consent, or at least without the objection, of Judge Cowie, and prior to the actual trial of the case, to vacate this order and to transfer the cause to the circuit court. *Fordyce v. State ex rel. Kelleher,* 115 Wis. 608, 92 N. W. 430. Nor is the fact that the second order purports to respond to an irregular affidavit of prejudice fatal, since the county court is expressly authorized by sec. 14, ch. 293, to transmit the case, if in his discretion he deem it expedient.

The other assignment of error is that the court erred in refusing to permit the test of a lie detector to be presented to the jury. The following offer of proof was made by the defendant:

"The defendant above named offers to prove by Prof. Leonarde Keeler, of the Northwestern University Crime Detection Laboratory, of Chicago, Illinois, by a test upon the defendant and with his instrument known as the 'lie detector,' that the defendant was not in the city of Tomah on the date of the robbery and was not guilty."

The written offer contains a description of the device and the statement that it has been found to give "a continuous quantitative differential blood pressure and pulse curve; that one guilty of a crime becomes disturbed and has distinct emotional disturbances when questioned with reference to the details of a crime which he has committed; that such emotional disturbances are recorded on the 'lie detector' above described; that this 'lie detector' has been used in over 10,000 cases and that seventy-five per cent. of those upon whom the 'lie detector' has been used have confessed their guilt upon completion of a second test with the said 'lie detector.'"

Upon the question raised by this assignment of error there has been, so far as we can discover, only one reported decision. In Frye v. United States, 293 Fed. 1013, 34 A. L. R. 145, defendant had submitted to a deception test and offered the scientist who conducted the test as an expert to testify to the results obtained. The trial court sustained the objection to the offer. Upon appeal the court said:

"Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be

sufficiently established to have gained general acceptance in the particular field in which it belongs.

"We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made."

See notes 34 A. L. R. 145; 24 Columbia Law Review, 429; 37 Harvard Law Review, 1138; 33 Yale Law Journal, 771.

We are not satisfied that this instrument, during the ten years that have elapsed since the decision in the *Frye Case,* has progressed from the experimental to the demonstrable stage. In his work on Principles of Judicial Proof (2d ed.) 1931, Dean Wigmore says (p. 634):

"Looking back at the range of possibilities for experimental psychometric methods of ascertaining concrete data for valuing testimonial evidence, it will be seen that thus far the only new psychometric method that has demonstrated any utility is the blood-pressure method, which detects lies; . . . the record of psychometric achievement with testimony is still meager. . . . The conditions required for truly scientific observation and experiment are seldom practicable. The testimonial mental processes are so complex and variable that millions of instances must be studied before safe generalizations can be made."

It seems to us that this statement offers little comfort to one who contends that this device is past the experimental stage. While it may have some utility at present and may ultimately be of great value in the administration of justice, it must not be overlooked that a too hasty acceptance of it during this stage of its development may bring complications and abuses that will overbalance whatever utility it may be assumed to have. The present necessity for elaborate ex-

position of its theory and demonstration of its practical working, in order to convince the jury of its probative tendencies, together with the possibility of attacks upon the soundness of its underlying theory and its practical usefulness, may easily result in a trial of the lie detector rather than the issues in the cause. If the defendant in a criminal case is to be permitted to have tests taken outside of court and then to produce expert testimony as to the results of the tests when these are favorable to him, without the necessity of taking the stand or submitting to tests by the prosecution, the way would seem to be open to abuses that would not promote the cause of justice. It is our conclusion that the refusal of the trial court to admit this testimony was not error.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on March 7, 1933.