REFOULE v. ELLIS et al.
Civ. A. No. 3227.

District Court, N. D. Georgia,
Atlanta Division.

Oct. 10, 1947.

Hal Lindsay, of Atlanta, Ga., for plaintiff.

Shelton & Pharr, Ralph H. Pharr and Durwood T. Pye, County Attys., all of Atlanta, Ga., for defendants.

UNDERWOOD, District Judge.

The above case came on for hearing upon defendants' motion to dismiss.

This is an action by plaintiff, a citizen of France residing in the United States, under the Civil Rights Act, 8 U.S.C.A. § 43, for injunction and damages. It is predicated upon an alleged conspiracy between defendants, residents of Georgia and police officers of Fulton County, to deny plaintiff due process of law while acting under color of State authority by taking him into custody without warrant; thereafter illegally detaining him for long periods of time during which he was subjected to prolonged questioning in relays; inflicting violence upon his person to coerce his confession to the crime of uxoricide and other offenses; forcing him to submit to "lie-detector"

tests; and other related matters alleged to be violations of his constitutional rights.

Jurisdiction is invoked because of diversity of citizenship and the amount involved and because the action is one arising under the Constitution and laws of the United States to redress deprivation of the rights to life, liberty, and property and to immunity from compulsory self-incrimination granted by the due process clause of the Fourteenth Amendment. Plaintiff seeks to restrain defendants from again taking him into custody without a lawful warrant; further questioning him except with his consent after opportunity to confer with counsel; from threatening or intimidating plaintiff or any other person with respect to any charges brought or to be brought against him; and further, to suppress any inculpatory verbal or written statements secured from plaintiff under the conditions above related and also similar statements secured from other persons by similar means.

A motion to dismiss has been filed by defendants contending substantially that this Court is without jurisdiction to grant the relief sought; that plaintiff has failed to state a case upon which relief can be granted; that no facts showing violation of the Civil Rights Act are alleged; that plaintiff has an adequate remedy at law; and that a Federal Court of equity should not interfere with the State in the administration of its criminal laws. A second "Motion to Dismiss" alleges that an indictment for sodomy has been returned against plaintiff by a Grand Jury of Fulton County, based upon verbal and written statements given by him which will be offered in evidence at his trial; and that if his constitutional rights have been infringed in the procurement of same, he can object to their introduction in evidence at the time of trial, thereby enjoying adequate protection under the law.

### Jurisdiction.

Under the allegations of the complaint relating to diversity of citizenship, violation of civil rights and denial of due process of law in violation of the Fourteenth Amendment, this Court clearly has jurisdiction.

The Supreme Court said, in Chambers v. Florida, 309 U.S. 227, at page 240, 60 S.Ct. 472, at page 477, 84 L.Ed 716, after severely condemning and holding unlawful the use of "The rack, the thumbscrew, the wheel, solitary confinement, protracted questioning and cross questioning, and other ingenious forms of entrapment of the helpless," that, "We are not impressed by the argument that law enforcement methods such as those under review are necessary to uphold our laws. The Constitution proscribes such lawless means irrespective of the end. And this argument flouts the basic principle that all people must stand on an equality before the bar of justice in every American court."

In Brown v. State of Mississippi, 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682, the Supreme Court expressly held that the use of confessions obtained by such methods is "a clear denial of due process."

The decisions of the Supreme Court further hold that the action of a duly qualified officer, acting within the scope of his authority, constitutes state action, even though the particular acts complained of may not be authorized. Ex parte Commonwealth of Virginia, 100 U.S. 339, 25 L. Ed. 676; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. Such acts of responsible officers constituting state action are therefore within the prohibitions of the Fourteenth Amendment and the officers themselves are personally responsible to an injured party for such acts.

The settled construction of the Amendment is that it presupposes the possibility of an abuse by a state officer and deals with such contingency. "That is to say, the theory of the Amendment is that where an officer or other representative of a state, in the exercise of the authority with which he is clothed, misuses the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the state has authorized the wrong is irrelevant, and *the Federal judicial power is competent to afford redress for the wrong by dealing with the officer and the result of his exertion of power.*" Emphasis supplied. Home Telephone Co. v. Los Angeles, 227

U.S. 278, 287, 33 S.Ct. 312, 315, 57 L.Ed. 510.

■ Furthermore, the acts alleged come within the express prohibitions of the Civil Rights Statute the enforcement of which falls within the jurisdiction of the Federal Courts. Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

## Motions to Dismiss.

■ A motion to dismiss, as a matter of law, admits all well-pleaded facts alleged in the complaint. Mitchell v. Wright, 5 Cir., 154 F.2d 924, 925; Simmons v. Peavy-Welsh Lumber Co., 5 Cir., 113 F.2d 812, certiorari denied 311 U.S. 685, 61 S.Ct. 63, 85 L.Ed. 442. So considered, it can not be seriously contended that deprivation by defendants of plaintiff's civil rights and denial to him of due process of law are not sufficiently alleged in the complaint. Due process of law requires that "state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions and not infrequently are designated as 'law of the land.'" Hebert v. Louisiana, 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270. "The words 'due process of law' as used in the Fourteenth Amendment are intended to secure the individual from the arbitrary exercise of powers of government unrestrained by the established principles of private right and distributive justice." Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97.

■■ No question of compulsory self-incrimination, under a procedural statute, in an orderly trial in a State court, such as that presented in Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288, is here involved. Complaint is made, here, of arbitrary action by defendants under color of law in depriving him of liberty without due process of law by the exercise of personal restraint over him and confinement without a warrant, and resort to unlawful means in an effort to coerce a confession from plaintiff. While reasonable questioning of a suspect while in the custody of police officers is not prohibited either as a matter of common law or due process (Lyons v. Oklahoma, 322 U.S. 596, 601, 64 S.

Ct. 1208, 88 L.Ed. 1481), "the due process clause forbids compulsion to testify by fear of hurt, torture or exhaustion" (Adamson v. California, 67 S.Ct. 1672, 1677), and "so-called third degree methods have no place in our civilization." Perrygo v. United States, 55 App.D.C. 80, 2 F.2d 181, 184. Strikingly similar violations of civil rights were considered and discussed by this Court in United States v. Sutherland, 37 F.Supp. 344, and the Supreme Court has spoken too often and too emphatically upon this subject for it to be now held that denials of due process do not appear from plaintiff's petition. See Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; Id., 327 U.S. 274, 66 S.Ct. 544, 90 L.Ed. 667; Malinski v. New York, 324 U.S. 401, 65 S.Ct. 181, 89 L.Ed. 1029; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Ex parte Virginia, 100 U.S. 339, 25 L.Ed. 676; Home Telephone Co. v. Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423.

■ The second "Motion to Dismiss" may be considered either as a motion to dismiss under Rules of Civil Procedure, rule 12(b), 28 U.S.C.A. following section 723c, or a Motion for Summary Judgment under Rule 56. Considered as a motion to dismiss, it can not be sustained because matters outside the scope of the pleadings are presented. "* * * A motion to dismiss for failure to state a claim on which relief may be granted is to be heard on the face of the complaint and amendments." Kohler v. Jacobs, 5 Cir., 138 F.2d 440, 441. Accord, Emmons v. Smitt, 6 Cir., 149 F.2d 869; Cohen v. United States, 8 Cir., 129 F.2d 733; Polk Co. v. Glover, 305 U.S. 5, 9, 59 S.Ct. 15, 83 L.Ed. 6, construing Equity Rule 29, 28 U.S.C.A. § 723 Appendix. Moreover, the fact that plaintiff may not be entitled to all of the relief sought does not warrant dismissal of the entire suit. "* * * under existing rules of pleading

340

a complainant is not to be turned away unless on the facts pleaded he is entitled to no relief." Ware v. Travelers Ins. Co., 9 Cir., 150 F.2d 463, 465.

■ If the pleading be considered as a motion for summary judgment, it can not be sustained because directed solely to the effort of plaintiff to suppress evidence and not the entire controversy. Biggins v. Oltmer Iron Works, 7 Cir., 154 F.2d 214.

The motions to dismiss are, therefore, overruled and consideration will now be given to the evidence to the extent necessary to determine whether a preliminary injunction should issue as prayed.

### Preliminary Injunction.

The evidence is sharply conflicting in many particulars, but undisputed in certain of its aspects which I consider controlling.

Plaintiff has been questioned by defendants, or some of their number, on four separate occasions, on May 14, May 19, May 24, and June 13, 1947.

The first questioning began at an undisclosed hour in the late evening of May 14 and was concluded at about 3:30 a. m., May 15. It was conducted at Fulton County Police Headquarters, Fulton County Courthouse, Atlanta, Georgia. Plaintiff's son, Jon Refoule, was questioned at the same time and place out of the hearing of plaintiff, and a statement in writing secured from him.

The second questioning began shortly before dark on May 19 and was concluded about 10 a. m., May 20, but plaintiff was detained at the place of questioning until about 4 o'clock p. m., of that day, when his brother-in-law, William Ott Alston, came for him, a period of twenty-four hours. The questioning was conducted at plaintiff's former residence, 2450 Howell Mill Road, Atlanta, although he was then, and had been ever since his wife's death, staying at the residence of his mother-in-law, Mrs. Margaret Wright Alston, 1180 Bellaire Drive, N. E., Atlanta. About 9 o'clock p. m., on May 19, a young lady was brought to the Refoule residence and was there questioned out of the hearing of plaintiff. At times she and plaintiff were brought face to face and questioned. The young

lady remained at the Refoule residence until about 6 o'clock a. m., May 20, when she was carried to her home by defendant Ellis. Statements in writing were secured from plaintiff and the young lady.

The third questioning was conducted at the chambers of Judge Clarence Bell of the Civil Court of Fulton County, Atlanta, Georgia, and began about 1:30 o'clock a. m., May 25 and concluded about 4:30 o'clock a. m., May 26, 1947, though plaintiff was further detained until 6 o'clock a. m., a detention of thirty-one hours.

No warrant had been issued for the plaintiff's arrest prior to either of the first three periods of detention or questioning.

On each of the foregoing occasions certain of the defendants went to the home of plaintiff's mother-in-law and carried him from there to the place of questioning in official automobiles of the Fulton County Police Department. These individuals on the second occasion were defendants Fitzgerald, Bradford and Hughes, and on the third occasion, defendants Fitzgerald and Hughes. The evidence does not disclose the identity of the officers who called at the Alston home for plaintiff and his son on the first occasion.

No objection to accompanying the officers was made by plaintiff or any one in his behalf on the first two occasions. On the third occasion, the officers called at the Alston home about 11 o'clock p. m., and after plaintiff had retired for the night. While he was getting dressed, William Ott Alston, Jr., called Hal Lindsay, attorney retained by the family to represent plaintiff, by telephone and informed him the defendants Fitzgerald and Hughes were at the residence and proposed to take plaintiff away for further questioning. Defendant Fitzgerald spoke with Lindsay over the telephone and agreed to meet him in front of the Hurt building a short while later. As a result of the meeting at the Hurt building, defendants refused to permit Lindsay to see or confer with plaintiff or be present at the questioning and stated they would detain him only a short time.

Defendant Fitzgerald, while at the Alston home, threatened to arrest William

Ott Alston for interfering with officers in the discharge of their duty, because he insisted they had no right to take him into custody without a warrant.

The fourth and last questioning occurred June 13, 1947. Plaintiff was taken into custody about 8:30 o'clock p. m., at the Municipal Airport, Atlanta, Georgia, where he had gone to meet his aged parents who had come from France to be with their son in his trouble. He was allowed only a few minutes to speak to his parents whom he had not seen for two years. He was then carried from the Airport to the Fulton County Public Welfare building. On this occasion a warrant for his arrest, charging him with sodomy, was exhibited and defendants contend he was arrested thereunder. However, no entry was made thereon showing it had been executed, and plaintiff was not lodged in the Fulton County Jail until about 2:45 o'clock p. m., the next day, June 14, 1947. Plaintiff was questioned during this period of detention by certain of defendants and subjected to seven polygraph tests in two sittings by Goelitz and Keen of the Tampa, Florida, Police Department, acting on behalf of defendants, who had been brought from Florida for the purpose and had their machines all set up. The young lady who had been questioned at the Refoule residence on the night of May 14 and a young man were also questioned on this occasion and given the polygraph test, recordings being made of all the questioning and charts of the tests. A second young lady was brought from Cartersville in the early morning of June 14, questioned privately and in the presence of plaintiff, and a statement in writing secured from her.

During the questioning on May 14, no food was given plaintiff and none is deemed to have been necessary.

On the second questioning, plaintiff had sandwiches and coffee about 9 o'clock p. m., May 19, 2 o'clock a. m., on May 20, and breakfast at the Toddle House about 10 o'clock a. m., May 20, 1947.

On the third questioning, plaintiff was given ham sandwiches and coffee about 2 o'clock a. m., May 25, had breakfast at the Teddy Bear Restaurant on Leo Street on the morning of the 25th, and "regular meals with the officers" thereafter, the record being silent as to the particulars of any food given him during the remainder of the period.

On the fourth questioning, when the polygraph tests were given, plaintiff was supplied sandwiches and coffee in the early evening of June 13 and breakfast on the morning of June 14, 1947.

On the occasion of each of the several questionings, no one was present except plaintiff and certain of the defendants, with the exception of the individuals mentioned herein who were also questioned. On the last three questionings, neither plaintiff's attorney nor any of his friends or relatives knew where he was being detained or questioned.

Beyond the foregoing findings, the evidence is in sharp conflict, but it does not appear essential to a determination of the issues now presented that such conflicts be resolved in favor of either party. However, it seems clear that during the periods of questioning, plaintiff was in the custody and under the strict control of defendants and deprived of his liberty to go and come as he saw fit. Defendants deny that any atrocities were committed or violence used by them against plaintiff as he alleges and they aver that his questioning was neither prolonged, carried on in relays, nor continuous, but insist plaintiff was permitted to sleep, smoke, drink water, answer the calls of nature unattended, sit, stand, and move about as he pleased. Plaintiff, on the other hand, alleges the contrary and the evidence shows repeated and continuous questioning by a number of officers for many hours at the time at unreasonable times and unusual places and in circumstances nervously and physically exhausting. He may have been "permitted" to sleep, eat, et cetera, but it seems to have been by permission only and that the permission did not extend to liberty to leave the inquisition whenever he chose and go home to sleep in his own bed and eat his own food.

The circumstances surrounding the questioning of a suspect may show "a situation * * * inherently coercive," (Ashcraft

v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 926, 88 L.Ed. 1192), and the undisputed facts adduced at the hearing established the existence of such a situation in the present case.

In determining whether "a situation inherently coercive" exists, manifestly the first factor to receive consideration must of necessity be the nature of the detention. It can not be seriously contended that plaintiff was not taken into custody by defendants on each of the occasions presented by the evidence. Detention without a warrant is generally unlawful (Georgia Code, §§ 27-210, 27-212; Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819), and defendants therefore proceeded in disregard of plaintiff's constitutional rights in taking him into custody and detaining him for any purpose whatever on the first three occasions. The last occasion, although dignified by a warrant, occupies no better status than the previous three because the warrant shows no entry of execution, and if it was as a matter of fact executed, its plain mandate to either carry the accused before a committing magistrate or lodge him in the common jail was ignored and he was instead held and subjected to gruelling questioning for long hours under unusual circumstances and in unusual places and not permitted to communicate with his friends and relatives and counsel.

The second factor to be considered is the time of questioning. In the present case it seems singular that in every instance the questioning began and for the most part was conducted during the night hours and weekends, when the likelihood of interruption was at a minimum. The places of questioning must also loom large in any consideration of the situation, and in the instant case, the places selected by defendants were, except for the first period, apparently selected with a view to remove possibility of being disturbed by friends, relatives or counsel. Plaintiff was always alone with the defendants and their agents, except for other individuals sought to be implicated with him and by whom he was confronted for the purpose of inducing, if

not coercing a confession, and neither his relatives nor his attorney knew of his whereabouts.

Great stress is laid by defendants upon the fact that plaintiff, according to their testimony, accompanied them willingly and made no objection to answering questions, giving written and oral statements, or submitting to polygraph tests. The evidence and the circumstances cast some doubt upon the real willingness of plaintiff and the voluntary character of his statements. They must be "in fact, voluntarily made." Ziang Sung Wan v. United States, 266 U.S. 1, 45 S.Ct. 1, 3, 69 L.Ed. 131. This argument, however, was made and rejected in Gros v. United States, 9 Cir., 136 F.2d 878; Akowskey v. United States, 81 App.D.C. 353, 158 F.2d 649; and Bullock v. United States, 74 App.D.C. 220, 122 F.2d 213, and must receive the same treatment here. Such alleged assent, if given, may have been itself coerced and should be weighed in the light of "a situation * * * inherently coercive." The situation became more aggravated when plaintiff was confronted with women allegedly implicated in the matters being inquired about. Perrygo v. United States, 55 App.D.C. 80, 2 F.2d 181, 184.

The specific objective sought and the results obtained by the polygraph tests are not made to appear by the evidence, but, since statements had already been obtained, it could hardly have been the securing of legitimate evidence competent for use against plaintiff in an orderly trial in an organized tribunal because such evidence apparently has been uniformly held to be inadmissible. Frye v. United States, 54 App.D.C. 46, 293 Fed. 1013; People v. Forte, 279 N.Y. 204, 18 N.E.2d 31, 119 A.L.R. 1198; People v. Becker, 300 Mich. 562, 2 N.W.2d 503, 139 A.L.R. 1171; State v. Bohner, 210 Wis. 651, 246 N.W. 314, 86 A.L.R. 611.

So far as the preliminary injunction sought against future unconstitutional acts is concerned, the right to same appears to be supported by Bell v. Hood, 327 U.S. 678, 694, 66 S.Ct. 773, 777, 90 L.Ed. 939, wherein it was stated, " * * * it is es-

tablished practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the 14th Amendment forbids the state to do." This does not violate the general principle that equity does not ordinarily interfere with the administration of criminal laws. Plaintiff seeks to enjoin not the administration of criminal laws by the State of Georgia, but the illegal manner of administration by defendants as agencies of the State.

Defendants do not deny the detentions and questionings above described and have failed to express any intention to cease the commission of such acts in the future, but on the other hand, have strongly insisted that they were within their rights in doing what they have done and in continuing to do so in the future if they find it desirable to do so.

In view of this attitude, it seems that a preliminary injunction is demanded to protect plaintiff from infringement of his rights under the Constitution and Civil Rights Statute.

A preliminary injunction will issue enjoining the exercise of personal restraint over plaintiff by defendants without a warrant or confinement without lawful arrest, and from further questioning plaintiff without his consent after being afforded an opportunity of consulting with his counsel. Hague v. C.I.O., 307 U.S. 496, 59 S. Ct. 954, 83 L.Ed. 1423.

Plaintiff's prayers to suppress statements and recordings secured from him during the periods of detention are denied, as a court of equity is without jurisdiction to pass on the admissibility of evidence in a criminal case. Eastus v. Bradshaw, 5 Cir., 94 F.2d 788, certiorari denied 304 U.S. 576, 58 S.Ct. 1045, 82 L.Ed. 1539. When and if such evidence is offered against plaintiff in a proceeding in the State courts, he may then challenge its admissibility by appropriate objection.

Likewise, the prayers of plaintiff relative to alleged intimidation of witnesses and their coercion by defendants to give false testimony against him must be denied. If their civil rights have been violated,

they may institute proper proceedings to protect themselves, but such rights are not personal to plaintiff.

An order of preliminary injunction will be entered in accordance with this opinion.