Meyer, Plaintiff in error, v. State, Defendant in error.

*October 2—October 27, 1964.*

For the plaintiff in error there was a brief and oral argument by *James M. Shellow* of Milwaukee.

For the defendant in error the cause was argued by *Donald W. Steinmetz,* assistant district attorney of Milwaukee county, with whom on the brief were *George Thompson,* attorney general, and *William J. McCauley,* district attorney.

GORDON, J.

## *The Absent Witnesses.*

Mr. Meyer claims that an irregularity occurred when, of his four alibi witnesses who had been subpoenaed, three failed to appear. No evidence whatsoever is offered to show why such witnesses did not respond to their subpoenas. Mr. Meyer suggests that they may have been intimidated by the state, but there is not a shred of evidence in the record to support this contention.

The charge is further made that if the state in interviewing the alibi witnesses discovered evidence which was damaging to the state's case, it was the state's duty to produce such evidence. If there were any irregularity in connection with the failure of the subpoenaed witnesses to make their appearance, the error is not apparent on the record before this court. It is noted that compulsory process was available to Mr. Meyer under sec. 325.11, Stats., but he did not avail himself of this assistance.

## *Intimidation of Witnesses.*

One of the alibi witnesses who was subpoenaed did in fact appear. A second alibi witness presented himself at the trial without the service of a subpoena upon him. After the testimony of the two alibi witnesses was received, the trial judge ordered each of them detained in custody, adding that he hoped "that the district attorney's office will take the proper action."

If the trial court were of the opinion that perjured testimony was given, the reference of the matter to the district attorney for a perjury charge was appropriate. The decision

to hold such witnesses in custody was not made until after their original testimony and original cross-examination had been completed. The fact that each of such witnesses was thereafter called to the stand does not warrant the conclusion that his subsequent testimony was adduced with intimidation; this is especially true since in each case the later testimony was substantially the same as the original testimony.

It is to be noted that there was no jury in this case. Furthermore, the determination to hold the first alibi witness in custody was made at a time when the second alibi witness was not in the courtroom. We perceive no error in connection with the claim that the alibi witnesses were intimidated by the trial court.

### The Lie-Detector Test.

After the trial court had found Mr. Meyer guilty, it offered him the opportunity to take a lie-detector test regarding his participation in the robbery. The court advised Mr. Meyer that if he failed to pass the lie-detector test, he would be sentenced to the maximum term of thirty years. On the other hand, if he passed the test, the court stated it would "take it into consideration."

It is difficult to determine what the trial judge had in mind by engaging in this colloquy with the convicted man. Under no reasonable interpretation could the trial court's offer to Mr. Meyer be construed to relate solely to sentencing. Whether or not Mr. Meyer participated in the robbery must of necessity relate to the question of guilt or innocence. By advising Mr. Meyer that he might improve his situation if he passed a lie-detector test which showed that he did not participate in the crime, the trial judge made ambiguous whether guilt had been established beyond a reasonable doubt.

We recognize that the trial judge may have had some completely extraneous purpose in suggesting the lie-detector

test. It may in fact not have involved any uncertainty by the trial court as to guilt or innocence. Unfortunately, however, we cannot penetrate beyond the actual words used by the trial judge and the direct proposal made in open court to Mr. Meyer.

The procedure in which an accused, after being found guilty, is sentenced is not immune from scrutiny under the due-process clause. *Williams v. New York* (1949), 337 U. S. 241, 69 Sup. Ct. 1079, 93 L. Ed. 1337; *Townsend v. Burke* (1948), 334 U. S. 736, 68 Sup. Ct. 1252, 92 L. Ed. 1690.

The rule of *State v. Bohner* (1933), 210 Wis. 651, 246 N. W. 314, is still operative; nevertheless, in our opinion, the trial court's proposal to the accused compromised its finding relative to reasonable doubt. The presence in the record of equivocation on this crucial finding compels us in the interests of justice to grant a new trial under sec. 251.09, Stats.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

HALLOWS, J. (*dissenting*). I cannot agree the conduct of the trial judge made it ambiguous he was convinced beyond a reasonable doubt of the defendant's guilt or rendered the finding equivocal. Whatever value the lie-detector test or polygraph has as an investigatory tool, its results are inadmissible in evidence as having no probative value on the question of guilt. *State v. Bohner* (1933), 210 Wis. 651, 246 N. W. 314. Certainly it must be assumed the trial judge knew this rule of law and it is not to be presumed he would take the results of a polygraph into consideration in determining the guilt or innocence of a defendant.

A reading of the record indicates the only reasonable interpretation which can be given to the trial court's offer to the accused related solely to sentencing. At the close of the

trial the attorneys argued the effect of the evidence. The main question was whether the defendant was identified beyond a reasonable doubt as the individual who participated in the crime. After argument, the court found the defendant guilty and stated there was no doubt in the court's mind from the positive identification of three witnesses that the accused was the individual who participated in the crime. The court then commented upon what is considered deliberate lying under oath by a witness and ordered an investigation.

Because of the vigorous argument of innocence by the accused's counsel the court then addressed the accused defendant, "Now, as to you, Kenneth Meyer, the court will give you an opportunity to take a lie detector test in this case since you are so sure and have told your attorney that you did not participate in this. The maximum sentence in this case is thirty years for armed robbery. If you don't so pass that lie detector test, this court will then order the said maximum sentence in this case. On the other hand, if you do pass that test, this court will take it into consideration." The court further told the defendant to confer with his attorney before he decided what he wanted to do. The court further stated, "I told you I will take it into consideration. You don't have to take the test if you don't wish, but I will pass sentence at this time . . . . What do you wish to do?" Defendant: "I will take it." It is clear the trial judge did not desire the test. His mind on guilt was made up beyond a reasonable doubt—any reference to the taking of a lie-detector test referred solely to sentencing.

The matter was thereupon adjourned to July 28th, at which time the defendant stated to the court he had nothing to say before the court passed sentence upon him. His counsel, however, in making a plea for leniency stated that, while the defendant had "not accepted the verdict perhaps in the best manner," he had "now adjusted himself" and was "willing to accept the penalty" the court imposed and

he was "willing to do the best thing he can in order to straighten out."

Nothing in the record, in my view, indicates the trial judge had the slightest doubt as to the guilt of the accused and the statements made by the court taken in their context and what had occurred at the trial do not create any ambiguity or equivocation in the court's finding. We agree that a finding of guilty by the trial court does not preclude this court from considering such conduct of the trial court as may indicate a doubt was in fact held, whether the results of a lie-detector test is a matter which a trial judge may properly take into consideration in sentencing under the due-process clause of the constitution is a question not now before the court. I would affirm.

I am authorized to state Mr. Chief Justice CURRIE and Mr. Justice HEFFERNAN concur in this dissent.