Lee **HERMAN** and Victor Herman, Plaintiffs,

v.

**EAGLE STAR INSURANCE COMPANY**, Ltd., a corporation, Centennial Insurance Company, a corporation, Niagara Fire Insurance Company, a corporation, Defendants.

No. 65–191.

United States District Court
C. D. California.

Sept. 28, 1966.

Jaffe, Osterman & Soll, by Arthur Soll, Los Angeles, Cal., for plaintiffs.

Welsh, Cummins & White, by James O. White, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR NEW TRIAL

CRARY, District Judge.

Plaintiffs move for a new trial for the several reasons noted in their motion but rely in chief on the grounds that the court erred " * * * in admitting the testimony of Kenneth Scarce concerning the administering by him and the taking by the plaintiff, Lee Herman, of a polygraph examination concerning the circumstances surrounding the mysterious disappearance of the diamond ring in question, together with the admitting into evidence of the chart of the polygraph examination, and admitting into evidence the interpretation by the witness, Kenneth Scarce, of the polygraph examination, and admitting into evidence the opinion of Kenneth Scarce concerning the results of the polygraph examination" (Page 1, line 28, to line 5, page 2, Motion for New Trial). Plaintiffs' points and authorities filed in support of their motion for new trial are devoted entirely to the matter of the polygraph evidence relating to plaintiff, Lee Herman, and plaintiffs urge that the polygraph and the testimony of Mr. Scarce were erroneously admitted, in that the stipulation therefor was not signed by plaintiffs' counsel and the right to object to the evidence was reserved in the Pre-Trial Order.

The question of the admissibility of evidence in trials in the Federal court is governed by Rule 43, Federal Rules of Civil Procedure. Applying that rule to the instant case, all evidence should be admitted if admissible under a Federal statute or rules applied by courts of the United States in suits in equity or under the rules of evidence applied in the courts of general jurisdiction of the State in which the United States Court is held.

The case of People v. Houser (1948), 85 Cal.App.2d 686, 193 P.2d 937, discussed hereinafter, concerns the question here involved, although some will argue that it is not clearly in point and for that reason cases in other jurisdictions are considered and discussed in this Memorandum Opinion with the purpose of determining what the rule in California would be in the factual situation found herein.

■ The general rule is well established in California and elsewhere that polygraph tests or testimony with respect thereto are not admissible in evidence. The New Jersey appellate court in State v. Arnwine (1961), 67 N.J.Super. 483, 495, 171 A.2d 124, 131, said " * * * that there is not a single reported decision where an appellate court has permitted the introduction of the results of a polygraph or lie detector test as evidence in the absence of a sanctioning agreement or stipulation between the parties."

■ In the case at bar, Mrs. Herman (Lee Herman) signed an "Agreement re Polygraph Examination" (Defts.' Ex. C) which provided, in part, that the polygraph test be taken and that the "lie detector" examiner, Mr. Kenneth Scarce, might give all information re said test to the companies, and it was mutually agreed that Scarce " * * * testify respecting his examination and respecting his opinion based upon said examination in any court of competent jurisdiction subject to cross-examination by plaintiffs." It was further agreed that a transcript of the polygraph examination should constitute " * * * examinations under oath which are provided for in the policies of insurance issued by the companies * * *."

There is a controversy as to whether the agreement was signed by Lee Herman on November 11, 1964, when the polygraph test was given to Mr. Herman, her husband, at their home in Beverly Hills, or on April 22, 1965, when Mrs. Herman's test was made at their home. The original agreement, signed by Mr.

Herman on November 11, 1964 (Defts.' Ex. D), contained the notation in the handwriting of Mrs. Herman, "Due to illness Mrs. Herman is not taking the polygraph examination. (Signed) Lee Herman."

Mr. Herman's test was made before the plaintiffs had employed counsel to file the instant action. Charles J. Katz, Esq., was employed for that purpose some time after November 11, 1964. The case was filed in the State court on January 25, 1965, and removed to this court on or about February 5, 1965.

At the time Mrs. Herman underwent the polygraph test on April 22, 1965, she was represented at the examination by Attorney Arnold Shane, an associate of Mr. Katz. Mrs. Herman was tested by Mr. Scarce in the presence of Mr. Shane and Mr. White, counsel for the defendant companies.

The evidence is in conflict as to when Mrs. Herman signed the agreement dated April 22, 1965. That agreement was a carbon copy of the November 11, 1964, agreement and was amended by Mr. Shane, or on his suggestion, by omissions and interlineations (See Ex. C). It is noted that all handwriting and the signature of Mr. Herman on the agreement dated November 11, 1964 (Ex. D), as well as Mrs. Herman's signature following the notation as to why she was not taking the test at that time, were written with a pen containing purplish ink whereas the changes in the agreement dated April 22, 1965, (Ex. C) and Mrs. Herman's signature thereon are in blue ink. Mr. Shane, by his supporting affidavit, states he inserted the amendment to paragraph 4 of the stipulation of April 22, 1965 (Ex. C). It appears on close examination of the ink used in the changes that it is the same as that in the signature "Lee Herman". The pen used by Mr. Herman in signing the agreement (Ex. D) on November 11th is obviously the same as used by Mrs. Herman in the writing and signing of the note re her illness on the November 11th agreement. If she had signed the April 22nd agreement on the previous

November 11th date, it is reasonable to conclude she would have used the same pen to sign the copy which was used on April 22nd as used in her note and signature thereto made on November 11th. Likewise it is logical to conclude that the amendments and Mrs. Herman's signature on the agreement dated April 22, 1965, were written with the same pen and therefore at the same time. It is obvious that the ink used on the November 11th and April 22nd agreements is not the same.

Mrs. Herman testified that she signed the stipulation dated April 22, 1965, on November 11, 1964. Lapse of time often dulls memory and it is true that Mrs. Herman did sign the note on the November 11th agreement. It might be easy to confuse the date of her signing the agreement date April 22, 1965, in the circumstances.

It appears reasonable to conclude from a consideration of all the evidence that the agreement dated April 22, 1965, was signed by Mrs. Herman on that date. Her counsel, Mr. Shane, at that time, did not sign the agreement and stated in a supporting affidavit that he was asked by Attorney White to sign the stipulation but he declined. Mr. White stated in open court and confirmed by affidavit dated September 6, 1966, that Mr. Shane refused to sign the stipulation for the reason he was new in the case but that he would and did permit Mrs. Herman to sign and that she did so sign the stipulation on April 22, 1965.

The question to be determined is whether in the circumstances the polygraph test and the testimony of the examiner re same were properly admitted.

All but one of the many cases examined by the court which concern the use of polygraph tests as evidence were criminal cases.

Referring first to California authorities, the only case wherein a polygraph and testimony of the examiner were held to have been admitted properly is People v. Houser, 85 Cal.App.2d 686, 193 P.2d 937, 940 and 942. That case involved

prosecution of the defendant for lewd and lascivious conduct. One of the grounds urged on appeal was error in the admission of the results of a polygraph test. A *written stipulation* had been signed by the prosecutor, the defendant and his counsel, authorizing receipt of the results of the test in evidence and stating that the operator was an expert in interpreting the results of the test. After reciting the stipulation the appellate court observed:

"It would be difficult to hold that defendant should now be permitted on this appeal to take advantage of any claim that such operator was not an expert and that as to the results of the test such evidence was inadmissible, merely because it happened to indicate that he was not telling the truth * * *." (Page 942)

Counsel for plaintiffs urge that this language suggests that the defendant first raised the objection on appeal. It is true the opinion is not clear in this regard but if the point was being first raised on appeal it appears more likely that the appellate court would have summarily disposed of the point on that ground rather than discussing the testimony re the polygraph and the terms and effect of the stipulation.

Stone v. Earp (1951), 331 Mich. 606, 50 N.W.2d 172, 174, is the only *civil case*, which has been cited or research discloses, wherein the question here involved is discussed. During the course of the trial in that suit the judge stated he was not going to decide the case until both parties took a lie detector test. The parties thereupon agreed that each should take the test and the examiner be allowed to testify as to the results. The Supreme Court of Michigan held it was error to admit in evidence the results of the tests, which were favorable to the defendant and unfavorable to the plaintiff, but that such evidence was not prejudicial in the circumstances. At page 174 of its opinion the court says:

"We are not unmindful of the fact that at the direction of the trial court,

the parties agreed to submit to the tests, but whether by voluntary agreement, court direction, or coercion, the results of such tests do not attain the stature of competent evidence."

It appears to this court that the Stone case is to be distinguished from the case at bar by reason of the fact the tests in the Stone case were at the direction of the trial court and not pursuant to an agreement of the nature involved in the case at bar. At best, the comment of the court re a voluntary agreement not making the results of such tests competent evidence is dictum and no authorities are cited in support thereof. In Colbert v. Commonwealth (Ky.1957), 306 S.W.2d 825, the defendant appealed from a judgment of conviction of armed robbery. The court held that it was error to admit a lie detector test of the defendant. The defendant in the trial court requested permission to take the test and "agreed to be bound by the result." In holding the test inadmissible, the appellate court stated at page 827 of its opinion:

"Only one recorded case has come to our attention in which results of a lie detector test were held admissible on the basis of a stipulation. In that case, People v. Houser, 85 Cal.App.2d 686, 193 P.2d 937, the defendant not only stipulated in writing that the results of the test could be admitted in evidence, but also that the operator of the lie detector was a qualified expert. We do not consider the instant case to fall in that category. Here there was no written stipulation, but only an oral agreement to take the test and be bound by the results, which agreement was not entered of record at the time it was made. We think more formality should be required to give effect to an agreement of such importance. Furthermore, there is no contention that the agreement stipulated the qualifications of the person who gave the test. Accordingly, we do not approach the case as one involving a stipulation of full admissibility."

It is reasonable to conclude that the Kentucky court would have held a polygraph test taken pursuant to the agreement in the Houser case to be admissible.

The Supreme Court of Iowa, in State v. McNamara (1960), 252 Iowa 19, 104 N.W.2d 568, held that a lie detector test was admissible in evidence by reason of the agreement between the parties. The stipulation had been signed by the defendant and witnessed by her attorney and a deputy sheriff. Defendant's counsel, at the trial, objected to any evidence regarding the tests on the grounds they were unreliable and prejudicial. In affirming the conviction for second degree murder, the court observed, at page 574 of its opinion:

"In the case at bar the defendant expressly agreed and stipulated that the evidence of Professor Holcomb as to the polygraph tests might be received. Exhibit 39 was denominated a 'Release' but it was more than that. She agreed and stipulated that 'said examiner may testify in a Court of Law as to his opinion as to the results of said examination.' The release was signed only after negotiations between defendant's counsel and the county attorney, and after the above quoted portion thereof was typed as an addition to the printed form. In view of her agreement made with the approval of her able attorney she should not now be permitted to retract her agreement because the test proved unfavorable to her."

The McNamara case is re-affirmed by the Iowa court in State v. Freeland (1964), 255 Iowa 1334, 125 N.W.2d 825. In the case at bar counsel for Mrs. Herman was fully aware, at least by April 22, 1965, of the terms of the agreement re the polygraph examination. Mr. Shane read the agreement on April 22, 1965, and Mr. Katz states in his affidavit in support of the motion for new trial that Mr. Shane advised him of the terms of the agreement when he (Shane) returned to the office on April 22nd.

Plaintiffs, nor their counsel, at any time prior to trial took the position that the stipulation was not valid because it was not signed by plaintiffs' attorney. On April 23, 1965, plaintiffs' counsel filed their contentions of fact and law and on May 20, 1965, a comprehensive memorandum of law. In neither of these documents was any mention made of the claimed illegality of the stipulation for the taking or use in evidence of the polygraph and the testimony of the examiner or that Mrs. Herman was not bound by the agreement or any part thereof. No contention was made that the agreement was entered into by mistake or because of misrepresentation or that plaintiff should be relieved from same.

Present counsel came into the case on April 1, 1966. They now urge that by the terms of the Pre-Trial Order (page 7, lines 5 to 8, and lines 13 and 14), prepared by Mr. Katz, plaintiffs reserved the right to object to the polygraphs and transcriptions of recordings resulting from the examination, and so forth, of both plaintiffs. Plaintiffs were allowed to object to the offer of said evidence but the objection was overruled on the basis of the authorities referred to herein.

Mr. Shane filed an affidavit re the signing of the stipulation by Mrs. Herman but did not testify in that regard. Mr. Katz was not called as a witness and it appears from his affidavit in support of the motion for a new trial that all he knew about the signing of the stipulation by Mrs. Herman was what his clients had told him.

Although there has been much discussion as to the date Mrs. Herman signed the stipulation, the court concludes that the answer to the question involved is not determined solely by whether Mrs. Herman signed the stipulation on November 11th or April 22nd.

The Supreme Court of New Mexico in State v. Tremble (1961), 68 N.M. 406, 362 P.2d 788, 789, cited by plaintiffs, held that the trial court had erred in admitting in evidence the results of a lie detector test although the admission was by reason of a waiver signed by the defendant agreeing to be bound by the re-

sults of the test. At page 789, the appellate court observed:

"We think the court was led into error. The signing of a waiver did not alter the rule with regard to Hathaway's evidence." Citing Colbert v. Commonwealth, supra, and LeFevre v. State (1943), 242 Wis. 416, 8 N.W.2d 288.

In LeFevre v. State, the defendant, in a murder case, submitted to a series of lie detector tests under a stipulation with the District Attorney which provided that the results might be admitted in evidence. The results of the tests were favorable to the defendant but excluded by the court on objection of the State. The Supreme Court of Wisconsin held the exclusion proper in the circumstances, but the court gave no reason or authority for so holding other than State v. Bohner, 210 Wis. 651, 246 N.W. 314, a case in which no stipulation was involved. It is also to be noted in the Le-Fevre case that the *District Attorney had testified that the tests were favorable to the defendant*. At page 293, the court said:

"We have the word of the district attorney that those tests were favorable to the defendant. While the findings of these experts were properly excluded from the jury, the district attorney's testimony came in without objection and we regard it as very significant."

The results of the tests were therefore before the court, and the court, on appeal, held that the defendant's conviction was not supported by the evidence and the defendant was forthwith released from custody.

Counsel for plaintiffs also relies on State v. Lowry (1947), 163 Kan. 622, 185 P.2d 147. In that case the agreement was only to the taking of the test, not that the results could be used in evidence. The court observed, at page 151 of its opinion:

" * * * it must be remembered that we are not here considering a case where there was a prior agree-ment that the results of the test might be admitted in evidence * * *."

The court, in the Lowry case, also discusses and quotes at length from law review articles in the Wisconsin Law Review and others, all of which distinguish cases wherein a stipulation for use of the test is involved from those where no such agreement was entered into.

The Lowry case, supra, and others referred to herein, was cited in People v. Wochnick (1950) 98 Cal.App.2d 124, 219 P.2d 70, relied on by plaintiffs, but no stipulation for the use of the test was there involved and the general rule was applied which is based on the proposition that the lie detector has not " * * * attained such scientific and psychological accuracy, nor its operators such sureness of the interpretation of figures on a dial that the testimony here in question was competent, over objection, for submission to a jury holding the fate of the defendant in its hands * * *." This quotation from the Lowry case appears at pages 127 and 128 at page 72 of 219 P.2d of the opinion in Wochnick, supra.

Plaintiffs also rely on People v. Zazzetta (1963), 27 Ill.2d 302, 189 N.E.2d 260, wherein the Illinois court ruled that the polygraph test and results were not admissible because (a) the stipulation was "oral", (b) the defendant was a man with an eighth grade education who appeared without counsel at all times prior to trial, including the time the oral stipulation was made, (c) no evidence was introduced regarding the method of testing or the qualifications of the operator, and (d) the examiner was not available for cross-examination.

In the recent case of State v. Valdez (1962), 91 Ariz. 274, 371 P.2d 894, the Supreme Court of Arizona treated at length the question of the admissibility in evidence of a polygraph test and the expert testimony relating thereto in the circumstances there involved. The test had been made pursuant to a stipulation, between the County Attorney, the defendant and his counsel, which provided that the results of the test were admissible in evidence at the trial. The poly-

graph operator was permitted to testify to the results of the examination over the objection of defendant's counsel. The jury returned a verdict of guilty and the question of the propriety of the admission of the results of the test in the circumstances was certified to the Supreme Court of Arizona.

This being a matter of first impression in Arizona, the court reviewed many opinions of text writers, law review articles and authorities on the subject, including all of the cases cited and discussed herein except the Zazzetta case, decided after Valdez.

In commenting on the LeFevre case, supra, the court pointed out that the District Attorney objected to the "reports by themselves" of the polygraph examination and "only on the ground" that the examiners were not present and should have been called to testify as to the results (pages 898, 899). At page 899 the court comments on the holdings in several of the cases cited herein as follows:

"In addition to the express holdings in Houser and McNamara admissibility of lie-detector evidence upon stipulation has been indicated by implication in the following cases: State v. Arnwine, 67 N.J.Super. 483, 498, 171 A.2d 124, 132 (1961); Colbert v. Commonwealth, 306 S.W.2d 825, 71 A.L.R. 2d 442 (Ky.1957); Commonwealth v. McKinley, 181 Pa.Super. 610, 123 A.2d 735 (1956); State v. Lowry, 163 Kan. 622, 185 P.2d 147 (1947). For a discussion of unreported trial cases in which lie-detector results were admitted per stipulation see 1943 Wis.L. Rev. at 435; 26 J.Crim.L. & C. 262 (1935–36)."

The Arizona court, after discussing the cases pro and con re the admissibility of the results of polygraph tests, concludes that where the parties have stipulated to the admissibility of the evidence in Arizona criminal cases the evidence is admissible (subject to certain qualifications stated) to corroborate other evidence of a defendant's participation in the crime charged and if he takes the stand such evidence is admissible to corroborate or impeach his own testimony.

At page 900 of the opinion, the court commented on the perfection of the lie detector test and the probative value thereof as follows:

"With improvement in and standardization of instrumentation, technique and examiner qualifications the margin of proven error is certain to shrink. 'Modern court procedure must embrace recognized modern conditions of mechanics, psychology, sociology, medicine, or other sciences, philosophy, and history. The failure to do so will only serve to question the ability of courts to efficiently administer justice.' Chappell, J., concurring in Boeche v. State, 151 Neb. 368, 383, 37 N.W.2d 593, 596, 600 (1949). Although much remains to be done to perfect the lie-detector as a means of determining credibility we think it has been developed to a state in which its results are probative enough to warrant admissibility upon stipulation. Cf., People v. Zavaleta, 182 Cal.App. 2d 422, 6 Cal.Rptr. 166, 171 (1960)."

The Zavaleta case, 6 Cal.Rptr. 166, cited above, holds, in pertinent part:

"It has long been established that counsel may stipulate to evidence which may be received (People v. Mathews, 163 Cal.App.2d 795, 329 P.2d 983) even though it might be inadmissible (People v. Ah Ton, 53 Cal. 741); * * * In the absence of any claim that the stipulation was entered into by mistake, inadvertence, fraud or misrepresentation and that defendant should be relieved of the same, we find no merit to objection raised at this time." (Page 171)

In the case at bar neither Mrs. Herman nor her counsel were uninformed as to the nature of polygraph tests, as Mrs. Herman had undergone such a test

administered by her own polygraph expert, Mr. Russell James, in March, 1965, more than one month prior to her examination on April 22nd. Whether the stipulation was signed by Mrs. Herman on April 22, 1965, or November 11, 1964, does not appear to the court to be determinative of the matter. Her counsel was present before and during the examination, made changes in the stipulation and made no objection to Mrs. Herman taking the test. He knew the terms under which the test was being given and no objection was made as to the provision in the stipulation for use of the test in evidence or the manner in which it was taken. Although plaintiffs reserved the right to object to the polygraph test and transcriptions of the recordings in the Pre-Trial Order filed May 10, 1965, no mention was made of any contention of law in plaintiffs' memorandum of law filed May 20, 1965, that the tests, or either of them, would not be admissible in evidence although the provisions of the stipulation re admissibility into evidence of the tests were known to plaintiffs and their counsel at least since April 22, 1965, and this is true though a copy of the stipulation signed by Mrs. Herman was not sent to plaintiffs' counsel by Mr. White until December, 1965. It is also to be noted that no relief was sought from the stipulation at any time before trial.

There is little doubt but that plaintiffs would have relied on the stipulation if the polygraph tests had resulted favorable to plaintiffs' position. Having in mind all of the facts and circumstances in the case and the pertinent authorities, the court concludes that, by reason of the stipulation, Exhibit C, the testimony of Mr. Kenneth Scarce re his examination and his opinion based upon said examination together with the polygraph, plaintiffs' Exhibit 7, and the transcript of the examination, defendants' Exhibit F, were properly admitted into evidence.

For the reasons stated above, the plaintiffs' motion for new trial is denied.