**Fred CONLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 2, 1964.

Eugene C. Rice, Paintsville, for appellant.

John B. Breckinridge, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Frankfort, for appellee.

STEWART, Judge.

Fred Conley was indicted, tried, and convicted of the crime of incest and sentenced to 10 years' imprisonment. The prosecuting witness was his 14-year-old daughter, Lena Conley. He appeals.

The primary question presented for determination is whether it was prejudicial error to admit so-called lie-detector evidence upon the basis of a waiver signed by appellant, Conley.

The waiver recites in substance that appellant consented to submit to a lie-detector test, that he agreed the results could be introduced as evidence against him, and that the test to be taken was understood to be the standard polygraph test conducted by a qualified polygraph operator. The evidence shows that appellant was illiterate, being able to write only his name, but that he knew the contents of the waiver as it was read to him. The waiver also states that appellant was apprised of his rights. Appellant contended at the trial he did not understand it, and that he did not know what he was signing. It is undisputed that appellant did not have counsel at this time.

An annotation in 23 A.L.R.2d 1307, after pointing out that the lie detector is not an instrument that automatically and unerringly discloses a lie by the person being tested, states thus on the subject: "Rather, the lie detector is a scientific instrument which records certain physiological phenomena, such as changes in the pulse rate, blood pressure, respiration, and in electrodermal response, under the theory that a person telling a lie undergoes definitely ascertainable physiological reactions, whereas a person telling the truth will show only normal reactions. The procedure consists of attaching instruments to the subject's body and interrogating the person, commencing with innocuous questions so as to establish the person's normal reactions and then proceeding to question the subject as to a crime of which he is suspected or other matters upon which the interrogator seeks information."

In the case at bar carbon copies of two sheets of paper were filed in evidence by the Commonwealth's attorney, without being identified by the person who allegedly prepared it. It disclosed a list of 31 questions that were supposedly propounded to appellant, and that no answers were given. This conclusion was appended by the person who called himself the polygraph examiner: "The subject was found to be a capable reactor. After careful analysis of the polygrams, it is the opinion of the examiner that the subject did not tell the truth during this examination." Appellant objected seasonably to the introduction of this evidence.

Objection to the admissibility of the results of lie-detector tests is generally placed on the ground that such tests have not yet achieved scientific reliability. Regarding the accuracy of such tests, these statistics have been advanced: In 75 to 80 per cent of the cases the examination correctly indicates the guilt or innocence of the accused; in 15 to 20 per cent, the results are too indefinite to warrant a judgment one way or the other; and in 5 per cent, the margin of

error is conclusive. See Cureton, A Consensus as to the Validity of Polygraph Procedures, 22 Tenn.L.Rev. 713.

In 1961, a New Jersey appellate court wrote " * * * that there is not a single reported decision where an appellate court has permitted the introduction of the results of a polygraph or lie-detector test as evidence in the absence of a sanctioning agreement or stipulation between the parties." See State v. Arnwine, 67 N.J.Super. 483, 495, 171 A.2d 124, 131.

The Supreme Court of Arizona in a case of first impression held that polygraph or lie-detector tests and expert testimony relating thereto are admissible upon stipulation entered into by both the parties. See State v. Valdez, 91 Ariz. 274, 371 P.2d 894, decided May 23, 1962. The question of reliability of such tests was not resolved in this case. People v. Houser, 85 Cal.App.2d 686, 193 P.2d 937, and State v. McNamara, 252 Iowa 19, 104 N.W.2d 568, are two other cases that determined lie-detector evidence was admissible pursuant to a written stipulation.

This Court in Colbert v. Commonwealth, Ky., 306 S.W.2d 825, 71 A.L.R.2d 442, ruled it was prejudicial error to admit in evidence the results of a lie-detector test, which was ordered by the trial judge, after the accused in open court requested permission to be so examined and "agreed to be bound by the result." The grounds in the opinion upon which the test report was rejected as inadmissible were that the agreement in respect thereto, although voluntary, was oral, and the reasonable reliability and accuracy of the test given were not established.

 Because the scientific trustworthiness of the lie-detector test is still tenuous, the courts will not at present recognize in an unrestricted manner the results. Of course absolute infallibility is not the standard for admissibility of scientific evidence. But at this time it seems wise to demand greater standardization of the instrument, more improvement in the techniques of lie detection and in examiner qualifications, and the endorsement by a larger segment of the psychological and physiological branches of science, before permitting general use of lie-detector evidence in court.

It is our opinion the purported evidence growing out of the lie-detector test in the instant case should have been excluded, as it was objected to. Furthermore, since we are holding lie-detector results inadmissible, the written agreement that such might be introduced was not binding.

Wherefore, the judgment is reversed for further proceedings not inconsistent with this opinion.