[No. 47652–7.   En Banc.   January 15, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. RUDOLPH WILLIAM RENFRO, *Petitioner.*

*Tim O. Fogh,* for petitioner (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney, Joanne Y. Maida, Senior Deputy,* and *James E. Lobsenz, Deputy,* for respondent.

DOLLIVER, J.—Defendant Renfro was convicted by a jury of the first degree murder of a prostitute. We agree with the Court of Appeals (*State v. Renfro,* 28 Wn. App. 248, 622 P.2d 1295 (1981)), that no error was committed and

affirm the conviction.

Five issues are before us on appeal: (1) Did the trial court err in admitting the results of a stipulated polygraph test; (2) if the results of the polygraph test are found to be admissible, did the court then err by failing to give the jury limiting instructions; (3) did the court err in allowing the prosecution to use the defendant's prior conviction for rape for impeachment; (4) was defendant denied effective assistance of counsel; and (5) did the trial court comment on the evidence in violation of Const. art. 4, § 16?

On the morning of December 9, 1978, the defendant rented a room at a local motel. The assistant manager, Kathy Chapman, showed the defendant and the victim to the room. About 8 hours later, the victim's body was discovered lying on the bed. The cause of death was determined to be strangulation.

Renfro was arrested several days later. When questioned by Seattle detectives he asked whether he was being accused of having "choked" or "raped" the victim, even though the police had not informed him of the circumstances of her death. Other circumstantial and scientific evidence tended to connect the defendant with the crime. Hairs on the bed sheet upon which the victim was found were microscopically similar to the defendant's. Oil stains on the bed sheet were also consistent with those found on a towel the police seized from the defendant. Ms. Chapman identified the towel as the one she had seen the defendant wearing around his neck the morning of the murder. The defendant signed the motel register that day using an alias, and was given a key to the room where the victim was found. That same key was found in his car after his arrest. Even though he had been given a key, the defendant repeatedly asked Ms. Chapman to unlock the door to his room or give him a master key that night claiming he had locked himself out of the room.

In his own defense, the defendant testified that he had dropped the victim off at the motel with a man named "Earl" and then left to kill time. The victim was supposed

to "run a scam" on Earl by "turning a trick" with him. When the defendant later returned to the room, the victim was dead.

The defendant volunteered to take a polygraph examination and both he, his counsel and the State stipulated to the admissibility of the results. The examination indicated defendant was practicing deception when he denied killing the victim. The results of the polygraph examination were given to the jury. No instruction was offered or given with reference to the examination.

Over the defendant's objection, the State was allowed to introduce evidence for impeachment purposes that the defendant had a prior conviction for rape. This ruling is challenged on appeal despite the fact that on direct examination defendant attempted to excuse his failure to report the victim's death and his repeated lies to the police by arguing that he feared his probation for the prior conviction would be revoked.

The general rule in Washington has been that polygraph testimony is inadmissible absent stipulation by both parties. *State v. Sutherland,* 94 Wn.2d 527, 529, 617 P.2d 1010 (1980); *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974). Defendant now claims that despite the stipulation the polygraph results should still be inadmissible because the stipulation does not make the test any more reliable. He also contends that stipulations cannot change the law, that generally evidence of a polygraph examination is excluded on the ground that the technique has not attained general scientific acceptability. *State v. Descoteaux,* 94 Wn.2d 31, 614 P.2d 179 (1980).

It is true that the mere stipulation by the parties will not increase the reliability of a polygraph test. The record before us is insufficient for us to conclude that the polygraph has risen to the level where it can be said that it is reliable enough to be consistent with the standard of guilt required in criminal cases. *See State v. Woo, supra.* The issue, however, is not whether this evidence is by itself able to support a criminal conviction by proving an element

of the crime beyond a reasonable doubt. Rather, it is whether a polygraph test is reliable enough to be relevant. The test of relevancy is whether the evidence has a "'tendency to make the existence' of the fact to be proved 'more probable or less probable than it would be without the evidence". *United States v. Oliver,* 525 F.2d 731, 737 n.11 (8th Cir. 1975); *see State v. Jimerson,* 27 Wn. App. 415, 421, 618 P.2d 1027 (1980).

■ When there is a stipulation as in this case, the prosecution and the defense, knowing that the degree of reliability is open to question, in effect gamble that the test will prove favorable to them. Under this circumstance and in this case, if the requirements listed below are met, we will enforce a stipulation and admit the test. The results of the polygraph examination are admitted not because the test is completely reliable, but rather because it is reliable enough to be relevant. Both parties, each from a different perspective, believed the result of the polygraph examination would be relevant to the case and by their stipulation waived any question as to the degree of the reliability of the polygraph. *State v. Renfro, supra; see State v. Dean,* 103 Wis. 2d 228, 307 N.W.2d 628 (1981).

More than a stipulation by the parties is needed, however. There must be further safeguards before polygraph evidence may be admitted. In *State v. Ross,* 7 Wn. App. 62, 497 P.2d 1343, 53 A.L.R.3d 997 (1972), the Court of Appeals, drawing on the Arizona case of *State v. Valdez,* 91 Ariz. 274, 371 P.2d 894 (1962), set forth these requirements for the admission of a polygraph examination:

(1) That the [prosecuting] attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i. e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted

under proper conditions he may refuse to accept such evidence.

(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross–examine the examiner respecting:

a. the examiner's qualifications and training;

b. the conditions under which the test was administered;

c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given.

*State v. Valdez, supra* at 283–84. We adopt these standards as the law in this state.

■ There is no contention the first three standards have not been met. The only question is whether the trial court must give the jury instructions indicated under (4) of the safeguards even if the instructions are requested by neither party. Unlike Arizona in *State v. Trotter,* 110 Ariz. 61, 514 P.2d 1249 (1973), we do not feel that the trial court is required to give the instructions sua sponte if they have not been requested. These instructions are not crucial to constitutional due process which is insured by the application of the first three safeguards. Rather, the instructions are relevant to the strategy of individual trial counsel and must remain within that purview.

In this case, refusing to request the instructions appears to be consistent with the strategy of the defendant. When the stipulated polygraph examination proved to be unfavorable, defense counsel attempted to make the best of what he had. Counsel attempted to show that the defendant's proclivity for lying was based on fear that if the police

found out with whom he had been associating, his probation for the earlier rape conviction would be revoked. In closing argument, the defense counsel tried to show that the polygraph was indeed correct because the deception it detected was this fear. To then ask for a limiting instruction would have been contrary to his argument. We will not second guess the tactics of trial counsel.

ER 609(a)(1) provides that conviction of a crime punishable by imprisonment in excess of 1 year can be used to attack the credibility of a witness if "the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant". There is merit to the contention that crimes of an assaultive nature usually have only a slight probative value of veracity (*Gordon v. United States,* 383 F.2d 936 (D.C. Cir. 1967)), and when the crime parallels that for which a defendant witness is being tried, prejudice is magnified. *United States v. Puco,* 453 F.2d 539 (2d Cir. 1971). The decision on admission, however, rests within the sound discretion of the trial court. *State v. Alexis,* 95 Wn.2d 15, 16, 621 P.2d 1269 (1980).

In a pretrial motion, the defense sought to exclude testimony regarding the defendant's prior conviction for rape. In balancing the probative value with the prejudicial effects, the court ruled that, unless the defendant raised the question on direct examination, the prosecutor was limited to asking if the defendant had been convicted of a crime and, if so, what was the crime. Despite the fact the defendant raised his probationary status on direct examination and defense counsel raised the subject in his opening statement, the prosecutor still asked only what the court allowed in its ruling.

When the subject was raised later during direct examination, this allowed the prosecutor to inquire into the nature of the offense. *State v. Hultenschmidt,* 87 Wn.2d 212, 550 P.2d 1155 (1976). The defendant contends *Hultenschmidt* is not applicable as it was decided under the old evidentiary rules and at the time the court lacked dis-

cretion on whether to admit prior convictions. *State v. Ruzicka,* 89 Wn.2d 217, 570 P.2d 1208 (1977). This argument misses the point of *Hultenschmidt* which stands for the still valid proposition that once a subject has been raised during direct examination further inquiry is proper on cross–examination.

■ Defendant next claims he was deprived of a fair trial because his trial counsel was ineffective. The test in Washington is whether "[a]fter considering the *entire record,* can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial". *State v. Thomas,* 71 Wn.2d 470, 471, 429 P.2d 231 (1967). This court has refused to find ineffective assistance of counsel when the actions of counsel complained of go to the theory of the case or to trial tactics. *State v. Ermert,* 94 Wn.2d 839, 621 P.2d 121 (1980); *see also State v. Mode,* 57 Wn.2d 829, 360 P.2d 159 (1961).

While it is easy in retrospect to find fault with tactics and strategies that failed to gain an acquittal, the failure of what initially appeared to be a valid approach does not render the action of trial counsel reversible error. Both defense counsel and the defendant felt that to take a polygraph examination and stipulate its admission was the proper course of action. When the results of the polygraph test proved to be against the defendant, counsel simply tried to make the best of a bad situation and to use the defendant's failure of the polygraph examination to his advantage. Likewise, after he failed in his pretrial motion to exclude the prior conviction, counsel seized the offensive and raised the subject himself in an effort to downplay the importance that might be attached to it. Neither course of action can be said as a matter of law to constitute error.

■ As to the final issue, we cite with approval the language of the Court of Appeals:

Finally, defendant contends the trial court commented on the evidence in violation of article 4, section 16 of the Washington State Constitution. In ruling on an objection during the State's opening statement, the trial judge

stated: "The objection is going to be sustained to the preceding comment regarding threats. The jury will be instructed to disregard that statement." This ruling by the court did not constitute an impermissible comment. A trial judge has commented on the evidence if he or she has conveyed to the jury his or her personal opinion regarding the truth or falsity of any evidence introduced at trial. *State v. Bogner,* 62 Wn.2d 247, 382 P.2d 254 (1963). A ruling such as was made here is not a comment on the evidence.

*State v. Renfro, supra* at 256.

The conviction is affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, HICKS, WILLIAMS, and DIMMICK, JJ., concur.

DORE, J. (dissenting)—Because the results from lie detector tests have not been shown to be reliable, and possess a high potential for prejudice, they are generally inadmissible. *See* Annot., 53 A.L.R.3d 1005 (1973). Stipulations neither make the process more accurate nor eliminate the danger of the usurpation of the jury's fact–finding role. I would, therefore, hold that the court erred in admitting the polygraph evidence over the defendant's objection. Furthermore, the error was magnified by the court's failure to protect the defendant's right to a fair trial by properly cautioning the jury as to the potential imperfections of such polygraph tests.

Polygraph test results are uncertain. *State v. Young,* 87 Wn.2d 129, 131–32, 550 P.2d 1 (1976); *State v. Woo,* 84 Wn.2d 472, 527 P.2d 271 (1974); *State v. Pleasant,* 21 Wn. App. 177, 188–92, 583 P.2d 680 (1978), *review denied,* 91 Wn.2d 1011, *cert. denied,* 441 U.S. 935, 60 L. Ed. 2d 664, 99 S. Ct. 2058 (1979); *People v. Leone,* 25 N.Y.2d 511, 255 N.E.2d 696, 307 N.Y.S.2d 430 (1969). The Oklahoma Criminal Court of Appeals identified five factors responsible for error in these examinations: (1) emotional tension, (2) physiological abnormalities, (3) mental abnormalities, (4) unresponsiveness in a lying or guilty subject, and (5) unob-

served muscular movements which produce ambiguities or misleading indicators in the blood pressure tracing. *Henderson v. State,* 94 Okla. Crim. 45, 230 P.2d 495, 501–02, 23 A.L.R.2d 1292 (1951). *See also Romero v. State,* 493 S.W.2d 206, 210 (Tex. Crim. App. 1973). Polygraph experts concede that there is no way of precisely measuring the accuracy of the "lie detector". J. Reid & F. Inbau, *Truth and Deception* 303–04 (2d ed. 1977). Additionally, the competency of the examiner is a potential source of error. *State v. Tavernier,* 27 Or. App. 115, 555 P.2d 481 (1976); *United States v. Lanza,* 356 F. Supp. 27 (M.D. Fla. 1972). *See* Highleyman, *The Deceptive Certainty of the "Lie Detector",* 10 Hastings L. J. 47, 57–61 (1958).

Triers of fact also tend to view polygraph evidence as conclusive on the issue of the guilt of the accused. *Romero v. State, supra* at 211; *People v. Davis,* 343 Mich. 348, 373, 72 N.W.2d 269 (1955); *United States v. Alexander,* 526 F.2d 161, 169–70 (8th Cir. 1975). *See* J. Richardson, *Modern Scientific Evidence* (1961).

Yet, despite the polygraph's uncertain reliability and the potential danger incident to its use, the majority holds that upon stipulation by the parties, *prior* to administration of the polygraph tests, test results may be admitted into criminal trials as evidence. This holding smacks of Russian roulette. The defendant is betting he will pass the test while the prosecution is hoping that the test will show defendant is lying. The stipulation has little or nothing to do with the guilt or innocence of the defendant.

A better view was expressed by the Ohio Court of Appeals in the case of *State v. Hill,* 40 Ohio App. 2d 16, 23, 317 N.E.2d 233, 238 (1974).

> We do not consider it logical and reasonable to hold . . . that [polygraph] evidence has probative value when offered under a stipulation . . . but that it has no probative value without such stipulation.

Courts with this outlook have consistently refused to admit polygraph evidence over a defendant's objection, without regard to the parties' stipulation. *Romero v. State, supra;*

*Lewis v. State,* 500 S.W.2d 167 (Tex. Crim. App. 1973); *Pulakis v. State,* 476 P.2d 474 (Alaska 1970); *Conley v. Commonwealth,* 382 S.W.2d 865 (Ky. Ct. App. 1964); *Stone v. Earp,* 331 Mich. 606, 50 N.W.2d 172 (1951); *State v. Hill,* 40 Ohio App. 2d 16, 317 N.E.2d 233 (1974); *LeFevre v. State,* 242 Wis. 416, 8 N.W.2d 288 (1943); *State v. Corbin,* 285 So. 2d 234 (La. 1973); *United States v. Sadrzadeh,* 440 F.2d 389 (9th Cir. 1971); *Chambers v. State,* 141 Ga. App. 438, 233 S.E.2d 818 (1977); *People v. Monigan,* 72 Ill. App. 3d 87, 390 N.E.2d 562 (1979); *Akonom v. State,* 40 Md. App. 676, 394 A.2d 1213 (1978); *State v. Biddle,* 599 S.W.2d 182 (Mo. 1980); *State v. Frazier,* 252 S.E.2d 39 (W. Va. 1979).

Because polygraphs are sensitive to changes in muscular tension and blood pressure, the very act of stipulating the admission of the test results could increase the defendant's tension level, which reduces the machine's accuracy. *Truth and Deception, supra* at 37–38. Furthermore, we do not know that the defendant understood the many variables inherent in the administration and interpretation of the test when he entered the stipulation.

I agree with the statement of the Supreme Court of the State of Illinois in *People v. Zazzetta,* 27 Ill. 2d 302, 309, 189 N.E.2d 260 (1963):

> While a defendant may understandingly stipulate to much in a criminal trial, and may waive many objections, we think it manifestly unfair to bind him by a stipulation regarding the trustworthiness of scientific opinion far beyond his expected ken.

It is inconsistent and unfair for courts to affirm the unreliability of lie detector tests and simultaneously admit into evidence the results of a stipulated test. In doing so, I would hold that the trial court erred.[1]

---

[1]The only time polygraph test results might be properly admitted would be when offered under certain circumstances by the defendant. Due process requires that an accused be allowed to present evidence in his own behalf which is critical to his defense. *Chambers v. Mississippi,* 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). In *Chambers,* the court held that even though the testimonies of

The trial court magnified its error by failing to caution the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given. *State v. Valdez*, 91 Ariz. 274, 284, 371 P.2d 894 (1962). That message is embodied in the fourth of the *Valdez* requirements which were adopted by the majority. Because a mystique of credibility surrounds the "lie-detector" test, juries tend to abdicate their role as fact finder in favor of test results. This strikes at the heart of the defendant's Sixth Amendment right to trial by jury. The very court which drafted the *Valdez* standards has ruled that failure to give the cautionary instruction sua sponte was error. *State v. Trotter*, 110 Ariz. 61, 514 P.2d 1249 (1973). *See also State v. McDavitt*, 62 N.J. 36, 297 A.2d 849 (1972). I heartily agree.[2]

---

three persons offered as witnesses for the defense were based upon "hearsay," since the hearsay statements were of "considerable reliability" and very critical to the defendant's defense, due process mandated the admissibility of the testimony insofar as it was favorable to the defense.

The Court of Appeals for New Mexico interpreted *Chambers* as entitling a criminal defendant to admit polygraph test results on his behalf. *State v. Dorsey*, 87 N.M. 323, 532 P.2d 912 (Ct. App. 1975). "[W]here constitutional rights directly affecting the ascertainment of guilt are implicated", the due process right to a fair opportunity to defend against the State's accusations, *Chambers*, at 302, could justify the introduction of polygraph evidence. The New Mexico Supreme Court agreed that the defendant's due process rights provide a special basis for the admission of such evidence. *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975). I would adopt this rule in Washington.

Allowing the defendant to introduce polygraph evidence under these circumstances while denying the opportunity to the prosecution is consistent with our criminal justice system's presumption of the accused's innocence. If the traditional rules of evidence are to be compromised in the name of due process, they should be compromised only for those for whom this constitutional right is due.

[2]The official comment to ER 403 specifies that "[i]n deciding whether to exclude evidence on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction".

The majority denies the trial court's responsibility to instruct the jury as to the limitations on the evidence and justifies the omission as the product of defense attorney's trial strategy. Counsel tried to explain the test results in a way which would corroborate the defendant's story. But the test results are of uncertain reliability regardless of the chosen trial strategy, just as they are of uncertain reliability regardless of the parties' stipulations.

Whether the polygraph evidence is used to help the defense or the prosecution, it is still of limited probative value. The court had a duty to point this out. In failing to give the necessary *Valdez* cautionary instruction, the court aggravated its earlier error.

I would admit results of a polygraph test on stipulation of the parties only if the results were known at the time of the stipulation, and upon a cautionary instruction by the trial judge as to the test's limitations.

For the reasons outlined above, I dissent.

ROSELLINI, J., concurs with DORE, J.

Reconsideration denied March 3, 1982.

Implicit in this statement is the recognition that proper instructions can reduce the potential for prejudice. It could be argued that the admission of the polygraph evidence without contemplating a cautionary instruction for the jury constituted an abuse of discretion.