[No. 29759-1-II.   Division Two.   April 27, 2004.]

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN HOWARD ELLIOTT, *Appellant*.

---

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Lenell R. Nussbaum,* for appellant.

*Gerald A. Horne, Prosecuting Attorney,* and *Kathleen Proctor and Jesse Williams, Deputies,* for respondent.

ARMSTRONG, J. — Brian Howard Elliott appeals his jury conviction of two counts of first degree child rape, arguing that the court erred by admitting the results of a stipulated polygraph test without permitting him to present his expert's opinion, which disagreed with the State's expert's opinion as to the polygraph test results. We agree and, therefore, reverse and remand.

## FACTS

M.J., the five-year-old granddaughter of Elliott's wife, claimed that Elliott engaged in sexual acts with her and took a photograph of her engaged in sexually explicit conduct. M.J. told her mother that Elliott " 'doesn't understand when I tell him he can't touch me.' " Report of Proceedings (RP) (Sept. 11, 2002) at 139. She also said that Elliott "put his vagina in her vagina" and that he had licked her vagina. RP (Sept. 11, 2002) at 140.

M.J.'s parents took her to a medical clinic for an examination. The pediatric nurse found that M.J. had a yeast infection, that there was redness on her labia majora, and she had an indentation on her hymen. M.J. told the nurse the details of Elliott's sexual misconduct.

The trial court conducted a CrR 3.5 hearing to determine the admissibility of Elliott's statements during a polygraph test Detective Sergeant Barnes administered. After hearing testimony from Barnes, the trial court ruled that the statements were voluntary and thus admissible. The trial court also admitted, without objection, Barnes's testimony regarding the polygraph results. The defense sought to produce testimony from its own expert, who had a different opinion of the test results. The trial court rejected Elliott's proposed testimony, relying on the language and spirit of the polygraph agreement. The trial court also declined to interpret alleged ambiguity in the agreement against the State.

## ANALYSIS

Polygraph Agreement and Testimony

Elliott challenges the trial court's ruling that, by signing the polygraph agreement, he waived in part his right to cross-examine the State's polygraph examiner and to present his own expert's interpretation of the test results.

■ ■ Polygraph test results are admissible only by stipulation between the prosecutor and the defendant. *State v. Renfro*, 96 Wn.2d 902, 905, 639 P.2d 737 (1982) (citing *State v. Sutherland*, 94 Wn.2d 527, 529, 617 P.2d 1010 (1980)). The stipulation must allow the opposing party to cross-examine the test examiner regarding his or her qualifications and training, the test conditions, the limitations of the test and potential for error, and any other matter the trial judge deems pertinent. *Renfro*, 96 Wn.2d at 907. And even though the parties have stipulated to the admissibility of polygraph results, the judge retains the power to reject evidence of the test results. *Renfro*, 96 Wn.2d at 906-07 (citing *State v. Valdez*, 91 Ariz. 274, 283-84, 371 P.2d 894 (1962)).

Here, the prosecutor, Elliott, and his attorney signed the polygraph agreement. The parties agreed that Barnes would administer and interpret the test results. They also agreed that charges would be dismissed if Elliott passed, but the results would be admissible at trial if he failed. If the results were inconclusive, they would be inadmissible. The agreement stipulated that the test questions, answers, and results would be admissible, as well as the examiner's opinions regarding Elliott's use of deception. In the agreement, Elliott agreed not to call any witnesses to testify about the validity of polygraph testing or whether such results, including his own, were reliable. He also agreed not to cross-examine Barnes on these issues. The stipulation did allow Elliott to cross-examine Barnes about his "qualifications and training . . . the conditions under which the test was administered, and . . . the limitations of and possibilities for error in the technique of polygraphic interro-

gation, as governed by *State v. Renfro*, 96 Wn.2d 902 (1982)." Clerk's Papers (CP) at 7-8.

During the polygraph test, Elliott denied molesting M.J., touching her vagina with his tongue or licking her vagina, or putting part of his penis in her vagina. Barnes concluded, however, that Elliott was deceptive and had failed the test. The computer analysis of Elliott's responses also showed the highest level of deception (.99).

Elliott offered his expert's testimony on two issues: (1) the admissibility of the test results, and (2) the meaning of his particular test results. He argues that the trial court's refusal to hear the defense expert's testimony and to assess its reliability amounted to a failure to exercise discretion. And he contends, "[a] failure to exercise discretion is an abuse of discretion," citing *State v. Pettitt*, 93 Wn.2d 288, 296, 609 P.2d 1364 (1980) and *State v. Flieger*, 91 Wn. App. 236, 242, 955 P.2d 872 (1998).

■■ Under *Renfro*, the trial court retains discretion to reject the evidence if it is not convinced that the examiner is qualified or that the test was conducted under proper conditions. *Renfro*, 96 Wn.2d at 906-07. Elliott's agreement incorporated this required language from *Renfro*. But the agreement also precluded Elliott from presenting evidence as to the validity of polygraph testing in general or his specific test results. This language creates an apparent ambiguity, which Elliott contends must be resolved against the State because it drafted the document. We agree.

Generally, ambiguous contracts are construed against the contract drafter. *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 638, 745 P.2d 53 (1987); *State v. Sledge*, 133 Wn.2d 828, 838-39, 947 P.2d 1199 (1997) (contract principles apply to a juvenile plea agreement). To the extent the contract is ambiguous as to whether Elliott waived the right to challenge the validity of the test results, we construe the ambiguity in his favor. We do so by interpreting the agreement to allow Elliott to present evidence of the validity of polygraph testing, both generally and in his specific case, when the court considers the

foundation requirements for admitting the test results. Generally, this is an issue for the trial court alone, done outside the jury's presence. ER 104(c). This also allows the trial court to exercise its discretion to disallow the test results even though the parties have stipulated to its admissibility. But it preserves Elliott's agreement not to contest the reliability or validity of the test results before the jury.

■ The trial court also erred in not allowing Elliott's expert to testify about his interpretation of the test results. The agreement prevented Elliott from calling a witness to testify about the validity of polygraph testing or the reliability of polygraph test results including his own. But the agreement does not prevent Elliott from calling an expert who does not challenge the validity or reliability of the test results but simply disagrees with the State's expert's interpretation. The trial judge recognized that the agreement does not specifically cover this but ruled that the "spirit" of the agreement prevented the defense from calling an expert to disagree with the State's expert. RP (Sept. 3, 2002) at 36. We disagree.

The contract purports to limit Elliott's constitutional right to present witnesses and evidence on his own behalf. But "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). And "we indulge every reasonable presumption against the waiver of fundamental rights." *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942) (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 57 S. Ct. 809, 81 L. Ed. 1177 (1937)). Absent specific language that Elliott voluntarily and knowingly waived his constitutional right to call a witness to testify about the meaning of the test results, we will not read such a waiver into the agreement. *Glasser*, 315 U.S. at 70.

■ We conclude that the trial court should have allowed Elliott to present reliability and validity evidence when the trial court considered the foundation requirements for the

polygraph testing. Further, the trial court erred in refusing to allow Elliott's expert to testify about his interpretation of the testing. Because the latter is constitutional error, we must reverse unless we can say beyond a reasonable doubt that the error did not affect the jury verdicts. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). We cannot; accordingly, we reverse and remand for a new trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, A.C.J., and HOUGHTON, J., concur.